1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TYNISHA MARIE HORNBUCKLE,

Plaintiff,

v.

WARDEN MATEVOUSIAN, et al.,

Defendants.

Case No. 16-cv-05527-PJH

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 34, 51, 52

This is a civil rights case brought pro se by a federal prisoner pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Her claims arise from her detention at Federal Correctional Institution ("FCI") Dublin. Plaintiff alleges that defendants were deliberately indifferent to her serious medical needs for failing to diagnose and treat her ailments, specifically her recurring abdominal pain. Five of six defendants have been served and have filed motions to dismiss, or in the alternative, motions for summary judgment. Plaintiff has filed an opposition. For the reasons set forth below, the motions for summary judgment are granted.[1]

**DISCUSSION**

**Motion for Summary Judgment**

**A.    Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may

---

[1] Defendants' attorney filed a first motion for summary judgment for four defendants and, later, after a newly served defendant appeared in this action, filed a second motion for summary judgment.

1    affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

2    (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

3    reasonable jury to return a verdict for the nonmoving party.  *Id.*

4         The moving party for summary judgment bears the initial burden of identifying

5    those portions of the pleadings, discovery and affidavits which demonstrate the absence

6    of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

7    *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When

8    the moving party has met this burden of production, the nonmoving party must go beyond

9    the pleadings and, by its own affidavits or discovery, set forth specific facts showing that

10   there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough

11   evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

### B.    Eighth Amendment Standard

12        Deliberate indifference to serious medical needs violates the Eighth Amendment's

13   proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104

14   (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other*

15   *grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

16   banc).  A determination of "deliberate indifference" involves an examination of two

17   elements: the seriousness of the prisoner's medical need and the nature of the

18   defendant's response to that need.  *Id.*

19        A "serious" medical need exists if the failure to treat a prisoner's condition could

20   result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.*

21   "The existence of an injury that a reasonable doctor or patient would find important and

22   worthy of comment or treatment; the presence of a medical condition that significantly

23   affects an individual's daily activities; or the existence of chronic and substantial pain are

24   examples of indications that a prisoner has a 'serious' need for medical treatment."  *Id.* at

25   1059-60.

26        A prison official is deliberately indifferent if he or she knows that a prisoner faces a

27   substantial risk of harm and disregards that risk by failing to take reasonable steps to

28   abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only

2

1
2
3
4
5

"be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

6

### C.    Facts

7

The following facts are undisputed except where indicated otherwise:

8
9
10
11
12
13
14
15

Plaintiff was previously incarcerated at FCI Danbury, where she received psychiatric treatment for depression and was also treated for abdominal pain and nausea. Motion for Summary Judgment ("MSJ1") Cespedes Decl., Ex. A at 173-74, 321, 499-500. On January 6, 2014, while still at FCI Danbury, plaintiff was sent to a local hospital's emergency department for abdominal pain. *Id.* at 169-70, 502-11. A CT scan of her abdomen and pelvis was normal. *Id.* at 504-05. The ER doctors were unable to make a diagnosis and discharged her with instructions on what to do should the pain persist or worsen. *Id.* at 506-08. Plaintiff was transferred to FCI Dublin in February 2014 and remained there until August 2015. MSJ1, Rhaney Decl. ¶ 5.

16
17
18
19
20
21

On February 24, 2014, Defendant Cespedes, a mid-level health practitioner, conducted an initial medical screening for plaintiff, who made no complaints regarding any physical concerns. MSJ1, Cespedes Decl. ¶ 5-6. On March 5, 2014, defendant Johnson, a mid-level health practitioner, saw plaintiff and conducted a physical and medical history. MSJ1, Johnson Decl. ¶ 7. Plaintiff made no complaints of any medical conditions and exhibited no physical impairments at the March 5 visit *Id*.

22
23
24

On May 12, 2014, Cespedes treated plaintiff who reported abdominal pain. MSJ1, Cespedes Decl. ¶ 7, Ex. A at 128-29. He ordered an ultrasound and blood testing to rule out anemia and H-pylori. *Id.*

25
26
27
28

On the night of June 2, 2014, plaintiff complained of nausea and vomitting. MSJ1, Litsinberger Decl. ¶ 10. Defendant nurse Litsinberger treated plaintiff by confirming her vital signs were normal and released her back to her housing unit. *Id.* The next day, June 3, 2014, plaintiff was seen by Cespedes for complaints of pain, vomiting and

United States District Court
Northern District of California

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

nausea.  MSJ1, Cespedes Decl. ¶ 8.  Cespedes obtained the Medical Director's

authorization, and plaintiff was sent to an outside hospital for evaluation.  *Id.*  The outside

hospital diagnosed plaintiff with constipation.  MSJ1, Johnson Decl. ¶ 11; Cespedes Decl.

¶ 8, Ex. A at 194-97, 391-92.

Defendant Johnson performed a follow-up examination on plaintiff when plaintiff

returned to the prison on June 6, 2014, and provided acetaminophen for her abdominal

pain complaints.  MSJ1, Johnson Decl. ¶ 11.

On June 9, 2014, plaintiff had hoped for a liquid meal but was not provided one.

Third Amended Complaint ("TAC") at 2.  Defendant Warden Matevousian was present

and raised her request for a liquid meal with a staff member, who said that plaintiff was

not eligible for a liquid meal.  *Id.*  Warden Matevousian referred plaintiff back to the health

services unit.  *Id.*  Plaintiff was seen by Cespedes, who prescribed Dicyclomine, which is

used to treat irritable bowel syndrome.  MSJ1, Cespedes Decl. ¶ 9.  Cespedes also

treated plaintiff on June 12, 2014 for abdominal pain.  *Id.* ¶ 10.  Her vital signs were

normal, and he ordered blood tests to rule out any possible infection.  *Id.*  The blood test

results were within normal limits.  MSJ1, Cespedes Decl. Ex. A at 452-54.

On June 13, 2014, plaintiff was again seen by Cespedes, who referred her to a

gastroenterologist for a specialty consult, though it needed to be approved.  TAC at 3.

Plaintiff was also seen by a nondefendant doctor, who discussed her condition with her

and prescribed a new medication.  *Id.*

On June 23, 2014, plaintiff went to see Cespedes due to being in immense pain.

Cespedes checked her vital signs, performed an EKG and provided ibuprofen.  MSJ1,

Cespedes Decl. ¶ 11.

On June 27, 2014, plaintiff was seen by defendant Johnson for throbbing leg pain.

TAC at 3.  Johnson examined her, took her vitals and scheduled plaintiff to see a

hematologist.  *Id.*

Plaintiff was also treated for the first time by defendant Dr. Snell on June 27, 2014.

Motion for Summary Judgment filed on October 23, 2017 ("MSJ2") Snell Decl. ¶¶ 4, 8;

Snell Decl. Ex. A at 97.  Dr. Snell wrote a note about the examination, stating:

4

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11

> Spent approx. 30 minutes reviewing all pertinent lab and radiology results with patient. Explained that I do not have a diagnosis or explanation for her chronic abd. pain; it may be related to her Sickle Cell Trait (although unlikely) and that she will be referred to a hematologist for evaluation and possible rx. She relates some improvement with Dicyclomine to me; she had adverse effects with the oral Prednisone. I went over the potential diagnosis of Irritable Bowel Syndrome and explained the course of the disease and various treatment options. There is a GI consult pending and it is possible that a colonoscopy may be indicated to look for possible Inflammatory Bowel Disease (although no diarrhea or intermittent symptoms). I reassured her that all the abd exams (CT, sonograms) were normal and that there was no sign of cancer. Additionally, I recommended taking the prescribed NSAID, using the Mg Citrate in small doses to relieve constipation. I offered her the option of a trial dose of Elavil (recommended qhs) and a renewal of the dicyclomine rx which she accepted. She continues to have abd pain, but the underlying cause remains undetermined.

MSJ2, Snell Decl. Ex. A at 97.

12
13
14
15
16
17
18
19

Plaintiff states she was suffering acute leg pain and a swollen throat and had a seizure on June 30, 2014. TAC at 4. Cespedes treated her and determined she should be sent to a hospital to rule out herniation of a spinal disk. MSJ1, Cespedes Decl. ¶ 13. Dr. Snell approved the hospital transfer. *Id.* Plaintiff was given a CT scan at the hospital which revealed no distress, and her diagnosis was lower-leg pain, sciatica and abdominal pain (non surgical). MSJ1, Cespedes Decl. Ex. A at 424-35. The hospital concluded that plaintiff's condition was "good" and she was discharged. *Id.* at 433.

20
21
22
23
24
25
26

Dr. Snell examined plaintiff on July 6, 2014, after she reported having seizures. MSJ2, Snell Decl. ¶¶ 4, 8, Snell Decl. Ex. A at 71. Dr. Snell concluded that her symptoms were not medical in origin and referred her to a psychiatrist. *Id.* Plaintiff was taken to the hospital that day where she had a neurological consultation and a CT scan of her head in response to her complaints of seizures. MSJ1, Cespedes Decl. Ex. A at 405-16. The neurological examination revealed no tremors or seizure activity, the CT scan results were negative and plaintiff denied pain. *Id.* at 413, 417.

27
28

Plaintiff suffered a seizure on July 8, 2014, and was treated by Cespedes and Dr. Snell. TAC at 4; MSJ1, Cespedes Decl. ¶ 15. Dr. Snell wrote a note about the

1  examination, stating:

2       24 y/o black female well known to medical staff with extensive
3  workup being completed for chronic abd pain. Diagnosis of
    exclusion being Irritable Bowel Syndrome. Was brought to
4  medical on Sunday, July 6 evening with 'shaking spells' that
    have been labeled as seizure activity but do not involve gran
5  mal activity, no incontinence, no tongue biting or post ictal
    state. No history of epilepsy. She was treated with 50mg IM
6  of Benedryl (no anti-anxiety medication available) but sent to
    ER for evaluation because of elevated HR (128) and elevation
7  of temp (99.5). Returned to FCI after evaluation without
    recommendations. Brought to treatment area today and
8  observed by PA, RN and MD to have carpal-pedal spasm and
    frequent jerking motions of the chest and neck area. Patient
9  was at all times conscious and able to respond to commands
    and directions; vital signs were stable. Oxygen mask was
10  placed (for rebreathing) and Ativan (0.5mg) PO given x2.
    Activity continued and Ativan 2mg IM was given—shaking
11  activity stopped within 10 minutes of injection and she was
    interviewed by Psychologist on call. Patient care conference
    with AW, Chief Psychologist, CD, Psychologist on call and
12  AHSA—agreement was that this activity was not of a
    medical/neurological origin and the referral to contract
13  psychiatrist was necessary. Patient has already been on
    psychotropic meds but effect is questionable. Further course
14  will be dictated by patient's response to psychiatric meds and
    mental health intervention but potential for redesignation of
15  mental health status and transfer to a higher level of care is
    possible.

16  MSJ2, Snell Decl. Ex. A at 71.

17      On July 9, 2014, Johnson observed plaintiff lying on the floor shaking. MSJ1,

18  Johnson Decl. ¶ 12. Plaintiff was taken by gurney to the Health Services Unit, where she

19  was given a physical exam, neurological exam and EKG test. *Id.* Plaintiff was referred to

20  the Psychiatry Clinic where she was seen that day and released with new medication. *Id.*

21  On August 3, 2014, a nurse observed plaintiff experiencing a seizure and took her to the

22  medical department, where plaintiff received her medication. MSJ2, Snell Decl. Ex. A at

23  39-41.

24      On August 18, 2014, Cespedes examined plaintiff after her return from a hospital

25  examination. MSJ1, Cespedes Decl. ¶ 17. At the hospital plaintiff had had a pelvic MRI,

26  but the results were negative and the hospital recommended a colonoscopy. Cespedes

27  processed the referral. *Id.*

28

6

On September 17, 2014, Cespedes ordered a neurological consult. MSJ1, Cespedes Decl. ¶ 20. Nine days later, plaintiff received an MRI at the hospital for her episodic seizures. MSJ1, Cespedes Decl. Ex. A at 340. The findings were within normal limits: no evidence of acute infarct; no mass; no acute edema; regions of the temporal lobes and hippocampi were unremarkable; and no hydrocephalus. *Id.*

On December 17, 2014, plaintiff underwent a colonoscopy, endoscopy and esophageal biopsy at an outside facility. MSJ1, Litsinberger ¶ 16; Cespedes Decl. ¶¶ 26-27. As a result she was diagnosed with a condition known as candida esophagitis. MSJ1, Cespedes Decl. ¶ 27. Candida esophagitis is a fungus in the tissue of the esophagus which can be associated with several conditions, including diabetes and poor immune-system function. *Id.* Cespedes provided a new medication, Fluconazole, and requested new laboratory tests. *Id.* Plaintiff states that she has still not been properly diagnosed. Opposition at 2-3.

**ANALYSIS**

Plaintiff does not dispute the medical care she received that was described above. Plaintiff argues that defendants were deliberately indifferent to her serious medical needs in failing to properly diagnose her ailments and not quickly responding to her medical needs in certain circumstances. Defendants argue that while plaintiff had a serious medical need, she was provided prompt and extensive medical care at the prison and in referrals to outside facilities and specialists.

The undisputed facts demonstrate that plaintiff received a great deal of medical care in a prompt manner. She was quickly seen by medical staff at FCI Dublin and routinely taken to the hospital, where, over the course of several months, she had multiple lab tests, CT scans, MRIs and referrals to specialists in gastroenterology, hematology and neurology. She also underwent a colonoscopy, endoscopy and esophageal biopsy. All of these medical procedures and referrals occurred in a quick and efficient manner.

7

1         That defendants did not quickly ascertain the source of plaintiff's medical problems

2    does not demonstrate a constitutional violation in light of the extensive tests employed to

3    aid and diagnose plaintiff.  Plaintiff's argument that the many medications sometimes did

4    not work and sometimes had side effects also fails to demonstrate deliberate

5    indifference.  Defendants repeatedly tried different medications to see what would be

6    helpful and discontinued medication that did not work or caused side effects.  Defendants

7    have met their burden in showing that there is no genuine dispute as to any material facts

8    and they are entitled to summary judgment.  Plaintiff has failed in her opposition to show

9    that there is any issue for trial.  It would be difficult for plaintiff to demonstrate negligence

10    let alone the much higher standard of deliberate indifference.  While it is unfortunate that

11    plaintiff was in pain and discomfort, defendants went to great lengths to diagnose the

12    ailment and treat her.  Even if plaintiff has not been properly diagnosed as she argues,

13    she has not shown a constitutional violation that can survive summary judgment.

14         Dr. Snell treated plaintiff on four occasions and ordered diagnostic tests,

15    prescribed medication and referred her to outside specialists.  The evidence

16    demonstrates that he repeatedly took the reasonable and proper steps in addressing her

17    medical concerns.  Defendant has met his burden is showing that he was not deliberately

18    indifferent, and plaintiff has failed to meet her burden in showing any issue for trial.

19    Defendant Snell is entitled to summary judgment.

20         Cespedes treated plaintiff on many occasions.  Plaintiff argues that he constantly

21    changed medications and failed to address the underlying factors of her medical

22    problems.  However, the undisputed evidence shows that Cespedes ordered many tests

23    and referrals to specialists to identify the cause of her medical problems.  The changes in

24    medications were to aid plaintiff and determine which medication or combination of

25    medications would be most beneficial.  Defendant Cespedes is entitled to summary

26    judgment.

27         Plaintiff presents similar arguments against Johnson.  The evidence shows that

28    Johnson properly treated plaintiff on several occasions and that her actions were

8

1    reasonable.  Plaintiff's conclusory allegations with no support that Johnson should have

2    done more are insufficient to counter a motion for summary judgment.  The undisputed

3    facts describe the thorough treatment that Johnson provided to plaintiff.  Johnson is also

4    entitled to summary judgment.

5          The only allegations against Warden Matevousian are that he was made aware of

6    plaintiff's medical condition and did not properly follow through or demonstrate sufficient

7    concern.  In light of the extensive treatment that plaintiff received from FCI medical staff,

8    Warden Matevousian is entitled to summary judgment because he did not provide any

9    treatment and did attempt to aid plaintiff.

10          The allegations against Listinberger arise from one specific interaction with

11    plaintiff.  On the night of June 2, 2014, Listinberger treated plaintiff for nausea and

12    vomiting.  He confirmed that her vital signs were normal, counseled her about ways she

13    could ease her discomfort, advised her to see her normal provider the following morning

14    and then released her back to her housing unit.  Plaintiff argues that he was deliberately

15    indifferent for failing to provide more treatment, though plaintiff fails to argue what

16    treatment Litsinberger should have provided.  Plaintiff was seen by a different medical

17    staff member the next day and sent to an outside hospital, where she was diagnosed with

18    constipation.  Plaintiff fails to show deliberate indifference and Litsinberger is entitled to

19    summary judgment.

20          **Qualified Immunity**

21          The defense of qualified immunity protects "government officials . . . from liability

22    for civil damages insofar as their conduct does not violate clearly established statutory or

23    constitutional rights of which a reasonable person would have known."  *Harlow v.*

24    *Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the

25    plainly incompetent or those who knowingly violate the law.'"  *Saucier v. Katz*, 533 U.S.

26    194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can

27    have a reasonable, but mistaken, belief about the facts or about what the law requires in

28    any given situation.  *Id.* at 205.  A court considering a claim of qualified immunity must

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

Even if the court were to find that defendants had deprived plaintiff of a constitutional right, they would still be entitled to qualified immunity. It would not be clear to a reasonable official or medical professional that any of their actions would be unlawful in light of the extensive medical treatment that plaintiff received.[2]

**Unserved Defendant**

The United States Marshal has been unable to effectuate service on defendant Correctional Officer Raski. Plaintiff was provided additional opportunities to discover additional service information for Raski and was provided a subpoena, but she has not provided any new information.

Summary judgment may be granted by the court sua sponte in favor of a nonappearing party on the basis of facts presented by other defendants who have appeared. *See Columbia Steel Fabricators v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a

---

[2] As the court has not found a constitutional violation, the arguments that plaintiff failed to exhaust her administrative remedies and that the complaint fails to state a claim will not be addressed.

1  position similar to served defendants against whom claim for relief could not be stated);

2  *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding district court

3  on its own motion may grant motion to dismiss as to defendants who have not moved to

4  dismiss where such defendants are in a position similar to that of moving defendants).

5        The only allegation against Officer Raski is that in early June 2014 plaintiff was in

6  horrible stomach pain and another inmate found Raski while looking for help.  Raski went

7  to a counselor's office and called health services.  A nurse arrived, checked plaintiff's

8  vitals, and told plaintiff that she would get treatment the next day.  Raski said there was

9  nothing else he could do.  Plaintiff continued to vomit.  Plaintiff was seen by medical staff

10  the next day and sent to the hospital, where she was diagnosed with constipation and

11  discharged.  Raski was not deliberately indifferent to plaintiff's serious medical needs

12  when he, as a correctional officer, called Health Service to obtain medical help for plaintiff

13  and then deferred to the medical advice of the nurse who was treating plaintiff and where

14  plaintiff was ultimately treated and diagnosed with constipation the next day.  Summary

15  judgment is granted for Raski.  In addition, Raski is also dismissed for failure to serve

    pursuant to Fed. R. Civ. P. 4(m).

16  **CONCLUSION**

17        1.  For the reasons set forth above, the motions for summary judgment (Docket

18  Nos. 34, 52) are **GRANTED**.

19        2.  Defendant Raski is **DISMISSED** with prejudice from this action for the reasons

20  discussed above, and plaintiff's motion to discover his address (Docket No. 51) is

21  **DENIED**.

22        2. The clerk shall close the file.

23        **IT IS SO ORDERED.**

24  Dated: December 20, 2017

25

26

27                            PHYLLIS J. HAMILTON
                              United States District Judge

28  \\candoak.cand.circ9.dcn\data\users\PJHALL\_psp\2016\2016_05527_Hornbuckle_v_Matevousian_(PSP)\16-cv-05527-PJH-sj.docx

11